UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 15-13041-RWZ


THOMAS J. SCALA

v.

FEDEX FREIGHT, INC.


MEMORANDUM OF DECISION

September 6, 2017


ZOBEL, S.D.J.

On January 7, 2014, plaintiff Thomas J. Scala was driving on Route 100 in

Waterbury, Vermont, when his car was hit by a large chunk of ice. The ice crashed

through Scala's windshield and struck him, causing serious injuries to his eye and face.

In this lawsuit, Scala alleges that the ice came from a defendant FedEx Freight, Inc.

("FedEx Freight") tractor-trailer truck. He seeks to hold FedEx Freight liable for his

injuries on the ground that it was negligent. The matter is before me on defendant's

motion for summary judgment. Docket # 31.

I.      **Background**

I summarize the relevant facts in the light most favorable to Scala, the non-

moving party. See Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 172

(1st Cir. 2015).

On January 7, 2014, between 10:30 and 11:30 am, Scala was driving south on

Route 100 in Vermont. Jennifer Scala ("Jennifer"), Scala's then-fiancée, was in the

passenger seat.  As Scala was driving, a large chunk of ice fell onto his car, crashed through his windshield, and struck him in the face.  Following the incident, his vehicle stopped on the northbound side of Route 100, and phone calls were made to 911 at 11:32:34 am, 11:34:13 am, and 11:34:21 am.

Jennifer recalled seeing a white tractor-trailer in the vicinity, but she did not remember whether she saw the vehicle prior to or following the incident.  Another driver, Kevin Rogers, was driving a few hundred yards behind Scala just prior to the incident.  As Rogers drove through a curve, he saw snow and large sheets of ice coming off of a tractor-trailer with a "FedEx" logo on it.  He pulled over to the side of the road to avoid the ice and saw Scala's car in a snow bank.

On June 30, 2015, Scala filed the present suit in Massachusetts Superior Court, alleging his injuries were caused by FedEx Freight's negligence.  FedEx Freight removed the case to federal court on July 31, 2015, based on diversity jurisdiction, Docket # 1, and then moved to dismiss for lack of personal jurisdiction, Docket # 7.  I denied that motion on October 13, 2015.  Docket # 11.  The parties completed discovery, and FedEx Freight now moves for summary judgment on the ground that the evidence shows no FedEx Freight tractor-trailer could have been involved in the accident.  Docket # 31.

## II.    Standard

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue is 'genuine' for purposes of summary judgment if 'the evidence is such that a reasonable jury could return a verdict for the

nonmoving party,' and a 'material fact' is one which 'might affect the outcome of the suit under the governing law.'" Poulis-Minott v. Smith, 388 F.3d 354, 363 (1st Cir. 2004) (quoting Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993)).

## III.   Analysis

The outcome of this summary judgment motion depends on whether a reasonable jury, taking the evidence most favorably to Scala, could conclude that a FedEx Freight tractor-trailer was at the scene of the incident.  Scala's claim of negligence is that the tractor-trailer in question did not have its snow and ice removed properly, which caused ice to fall onto his car.  If FedEx Freight was not near Scala at the time the incident occurred, however, Scala's claim fails.

"To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage."  Jupin v. Kask, 849 N.E.2d 829, 834–35 (Mass. 2006); see also Cheney v. City of Montpelier, 27 A.3d 359, 361 (Vt. 2011) ("To succeed on a claim of negligence, a plaintiff must prove four elements: duty, breach, causation and harm.").[1]

---

[1]      Because this court is sitting in diversity, I apply state substantive law.  See Crellin Techs., Inc. v. Equipmentlease Corp., 18 F.3d 1, 4 (1st Cir. 1994).  Which state's law applies depends on Massachusetts, the forum state's, choice-of-law principles.  See id.  "Historically, in tort cases, Massachusetts applied the substantive law of the state where the alleged wrong occurred. . . . In the last few decades, however, Massachusetts has moved to a 'functional' approach for addressing choice of law issues."  Robidoux v. Muholland, 642 F.3d 20, 25 (1st Cir. 2011) (citations omitted).  "This functional approach 'responds to the interests of the parties, the States involved, and the interstate system as a whole.'"  Id. (quoting Bushkin Assocs., Inc. v. Raytheon Co., 473 N.E.2d 662, 668 (Mass. 1985)).  FedEx Freight assumes Massachusetts law applies, though maintains the outcome is the same under Vermont law.  Scala makes no argument as to which law applies.  Because the outcome is the same under both Vermont and Massachusetts law, I need not resolve the choice-of-law question.  See Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004) ("The first step in a choice of law analysis is to determine whether an actual conflict exists between the substantive laws of the interested jurisdictions . . . .").

"The first element, duty, is a question of law for the court to determine, although the court's decision about duty might require the jury to resolve predicate factual disputes upon which a determination of duty rests."  Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 6 (2010).  An actor generally "has a duty to exercise reasonable care" if his or her "conduct creates risks of physical harm to others."  Id.

Here, if there was no FedEx Freight vehicle near the scene of the incident, then FedEx Freight had no duty to Scala.  This is because, absent being in the vicinity, FedEx Freight could not have put Scala at risk of the harm alleged.  And based on the evidence, taken most favorably to Scala, I conclude no reasonable jury could find that a FedEx Freight vehicle was nearby when the incident occurred.

As a preliminary matter, FedEx Freight is a wholly-owned subsidiary of FedEx Corporation.  "Under Massachusetts law a parent corporation and its subsidiary are separate corporate entities."  Devlin v. WSI Corp., 833 F. Supp. 69, 74 (D. Mass. 1993).  Further, FedEx Freight is a distinct entity from FedEx Ground and FedEx Express.[2] FedEx Freight operates a facility in Berlin, Vermont; FedEx Ground and FedEx Freight operate a facility in Williston, Vermont.  FedEx Freight's logo is purple and red; FedEx Express's logo is purple and orange.   Whether a jury could find that the vehicle allegedly involved belonged to FedEx Corporation, it could not reasonably conclude that

---

[2]        To the extent Scala implicitly suggests that FedEx Freight, as a subsidiary of FedEx Corporation can be held liable regardless of what type of FedEx tractor-trailer was involved, he offers nothing to support such an assertion.  "It is a general principle of corporate law 'deeply "ingrained in our economic and legal systems" that a parent corporation . . . is not liable for the acts of its subsidiaries.'" Kraft Power Corp. v. Merrill, 981 N.E.2d 671, 677 (Mass. 2013) (alteration in original) (quoting United States v. Bestfoods, 524 U.S. 51, 61 (1998)).  Although a parent may be held liable for a subsidiary's acts in certain situations, such as when there is fraud, id. at 678, or when the "parent dominates the subsidiary in a pervasive manner," Devlin, 833 F. Supp. at 74, Scala makes no argument that any such circumstance applies.  Further, he offers no explanation as to why or how FedEx Freight, as a subsidiary, could be held liable for the acts of other FedEx Corporation entities.

it belonged to FedEx Freight.

First, no one at the scene of the incident could identify the tractor-trailer involved as belonging to FedEx Freight. Scala could not recall seeing any vehicles in the minutes leading up to the incident, Docket # 36-1, at 5, and Jennifer remembered seeing only a "big white truck" at some point around the time of the occurrence, Docket # 36-3, at 4. Rogers submitted two affidavits, one for Scala and one for FedEx Freight. See Docket ## 36-4; Docket # 33-5. The former included a written "Witness Statement" dated December 30, 2014. See Docket # 36-4, at 3–4. In these statements, Rogers attested that as he was driving south on Route 100, he saw a tractor-trailer with snow and ice falling from it driving north, and he recalled that the tractor-trailer contained a FedEx logo. However, in the "Witness Statement" he says only that the truck and trailer were white, with no mention of the colors of the logo or whether the tractor-trailer displayed the word "Freight," Docket # 36-4, at 4; in the affidavit submitted for Scala he gave no indication of the colors of the logo or whether the tractor-trailer showed the word "Freight," Docket # 36-4, at ¶ 6; and in the affidavit submitted for FedEx Freight, Rogers affirmatively stated that he did not recall the colors of the logo or seeing the word "Freight" on the truck. Docket # 33-5, at ¶ 4.

Second, data produced by defendant indicates that no FedEx Freight drivers were near the scene of the incident when it occurred. FedEx Freight tractor-trailers contain GPS units that record their location each time their ignition is turned on and off. There are two types of FedEx Freight drivers: "pick up and delivery" ("P&D") drivers and "road" drivers. P&D drivers pick up and deliver freight locally. Road drivers transport freight between the FedEx Freight facility in Berlin, Vermont and FedEx Freight hubs in

5

New York and Connecticut.  These drivers leave the Berlin facility at night and return to the facility in the early morning.  Defendant produced data for all of the drivers working out of the Berlin, Vermont, facility on January 7, 2014.[3]

Based on the outgoing 911 phone calls being placed at 11:32:34 am, 11:34:13 am, and 11:34:21 am., the incident occurred soon before 11:30 am.  The GPS data shows that none of the drivers were in the vicinity at this time.  Of the P&D drivers, only one driver, Randall Gray, drove on Route 100 in Waterbury, Vermont, on January 7, 2014, and he was stopped in Montpellier, Vermont, about fifteen miles away from the accident, from 11:23:12 am to 11:39:42 am.  Docket ## 33, at ¶ 15; 33-10, at 1.  When Gray was driving on Route 100 in Waterbury, Vermont, it was between 12:45:47 pm to 12:55:55 pm, more than an hour after the incident.  Docket # 33, at ¶ 15; Docket # 33-10, at 1.  The remaining P&D drivers who were on the road that morning were at least twenty-five miles distant from Waterbury around the time of the incident.  Docket # 33-11; Docket # 38, at 5–7.  Of the road drivers, only one, Wayne Fink, was driving between 11 am and 12 pm on January 7, 2014.  At 11:27 am, Fink was in Sharon, Vermont, which is about 57 miles south of where the incident occurred; at 11:37 am, he was in Hartford, Vermont, about 64 miles south of the scene of the accident.  Docket #

---

[3]    During discovery, FedEx Freight produced data for the P&D drivers who were working out of the Berlin, Vermont, facility on January 7, 2014.  Following briefing and argument, I ordered FedEx Freight to produce GPS data for the "road" drivers as well, Docket # 43, which FedEx Freight did on July 17, 2017, Docket # 44.  The affidavits accompanying the data state that the data is for "every . . . driver who was working out of the FedEx Freight facility in Berlin, Vermont on January 7, 2014," Docket # 33-9, at 1; Docket # 44-1, at 1, and there is nothing in the record to suggest that there are any drivers for which data was not produced.

44, at 1–2; Docket # 44-2, at 8–13.  Based on this evidence, no reasonable juror could conclude that a FedEx Freight truck was in the vicinity when the accident occurred.[4]

Scala argues that a Broadspire Services, Inc. ("Broadspire"), letter creates a genuine dispute of material fact as to whether a FedEx Freight truck was involved in the incident.  Broadspire is a third-party claims administrator for Federal Express Corporation and FedEx Express.  In a July 21, 2014, letter from Broadspire to Scala's counsel, a Broadspire claims adjustor, Robert Williamson, states that Broadspire's "investigation shows that the vehicle involved in the . . . accident was a FedEx Freight vehicle."  Docket # 36-8, at 1.  Although its genesis is unclear, the letter appears to pertain to a claim made by Scala over the incident.  In any event, it was written by a third party and offered for the truth of the matter asserted.  There is no evidence that the author, Williamson, is an employee or agent of FedEx Freight, or that he made the statement on behalf of FedEx Freight, or that FedEx Freight adopted the statement as true.  As such, the letter is hearsay and would be inadmissible at trial.  <u>See</u> Fed. R. Evid. 801(d)(2).  "'It is black-letter law that hearsay evidence cannot be considered on summary judgment' for the truth of the matter asserted. . . . A genuine issue of material fact can be created only by materials of evidentiary quality."  <u>Hannon v. Beard</u>, 645 F.3d 45, 49 (1st Cir. 2011) (quoting <u>Dávila v. Corporación de P.R. Para La Difusión Pública</u>, 498 F.3d 9, 17 (1st Cir.2007)).  Accordingly, this letter cannot defeat summary judgment.

---

[4]      Scala suggests that this data is unreliable because it is possible for the system to lose connectivity or break.  However, there is no suggestion here that FedEx Freight could not account for any driver at the time of the incident.  Rather, the data shows that based on where the drivers were around 11:30 am, it was not possible for a FedEx Freight driver to be in the area at the time of the accident.

**IV.     Conclusion**

    FedEx Freight's Motion for Summary Judgment (Docket # 31) is ALLOWED.

Judgment may be entered accordingly.


    _____September 6, 2017_____                    _____/s/Rya W. Zobel_____
                DATE                                          RYA W. ZOBEL
                                                   SENIOR UNITED STATES DISTRICT JUDGE